UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Magistrate No. 07-557 |
| | : | |
| v. | : | Mag. Judge Alan P. Kay |
| | : | |
| SIDNEY SPAIN | : | PH/DH Date: Nov. 15, 2007 |
| | : | |
| Defendant. | : | |

MEMORANDUM OF LAW REGARDING THE CORRELATION BETWEEN VIEWING CHILD PORNOGRAPHY AND ESCALATION TO ACTING ON THOSE IMPULSES AND THE IMPACT ON CHILD VICTIMS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this memorandum of law in support of its motion for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(A).

CORRELATION BETWEEN VIEWING CHILD PORNOGRAPHY AND ESCALATION TO ACTING ON THOSE IMPULSES

Defendants suspected of child pornography offenses may pose a danger to society because of the potential connection between viewing child pornography and acting on those impulses. Those who possess and use child pornography become desensitized and eventually view the depictions in the pornography as acceptable behavior, which gives them permission to carry out their desires as the behavior escalates from merely viewing to finally acting.  Dr. Victor B. Cline, Pornography's Effects on Adults & Children, Morality In Media, 12 * 4 (2001).  The nature of these crimes involve addiction, which leads to escalation and a need to act out.  More importantly, even after pedophiles have been caught and reprimanded, courts have found it is common for them to "continue their aberrant conduct even in the face of warnings." United States v. Cocco, 604 F.Supp.1060, 1063 (M.D.P.A. 1985).  "These offenders target children in

cyberspace in a similar manner as offenders who prey on children in their neighborhood or nearby park. They seek vulnerable children, gradually groom them, and eventually contact them to perpetrate sexual abuse." Andres E. Hernandez, Self-Reported Contact Sexual Offenses by Participants in the Federal Bureau of Prisons' Sex Offender Treatment Program: Implications for Internet Sex Offenders, page 1, (2000).

"Both Congress and the courts have acknowledged a link between [child pornography and molestation." United States v. Hersh, 297 F.3d 1233 (11th Cir. 2002). On the Congressional side, Congress highlighted this connection in findings for the Child Pornography Prevention Act of 1996, 110 Stat. 3009, Sec. 121 (codified at 18 U.S.C. 2251). In that bill, Congress declared: "child pornography is often used as part of a method of seducing other children into sexual activity. A child who is reluctant to engage in sexual activity with an adult . . . can sometimes be convinced by viewing depictions of other children 'having fun' participating in such activity." See Finding (3).

The findings continued:

> "child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children; such use of child pornography can desensitize the viewer to the pathology of sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer." See Finding (4).

Congress's views on this issue were laid out even more clearly in the Senate Committee Report to the Child Pornography Prevention Act (S. Rep. No. 104-358 at 12-14 (1996)), which included references to the testimony of a number of experts supporting this correlation:

> "Child pornography stimulates the sexual appetites and encourages the activities of child molesters and pedophiles, who use it to feed their sexual fantasies. Law enforcement investigations have verified that pedophiles almost always collect

child pornography or child erotica. While some only collect and fantasize about the material without acting upon those fantasizes, in many cases coming to the attention of law enforcement the arousal and fantasy fueled by child pornography is only a prelude to actual sexual activity with children. Mrs. Dee Jepsen, president of Enough is Enough, testified at the June 4, 1996, Committee hearing that pornography `is an addiction that escalates, requiring more graphic or violent material for arousal, then leads to the persons in the materials being seen as objects, without personality, rights, dignity or feelings. The final stage is `acting out,' doing what has been viewed in the pornography. This leads to crimes of sexual exploitation and violence. * * * In the case of pedophiles * * * child pornography is actually `hard-copy' visualizations of their dangerous mental fantasies of having sex with children.'

Dr. Victor Cline testified at the June 4, 1996, hearing:

[t]he best evidence to date suggests that most or all sexual deviations are learned behavior. * * * In the case of pedophiles, the overwhelming majority * * * use child pornography and/or create it to stimulate and whet their sexual appetites which they masturbate to then use later as a model for their own sexual acting out with children. * * * [T]he use of child pornography in time desensitizes the viewer to its pathology no matter how aberrant or disturbing. It becomes acceptable and preferred. The man always escalates to more deviant material, and the acting out continues and escalates despite very painful consequences such as destruction of the family, loss of spouse, children, job, health or incarceration after committing criminal acts. * * * [A]ny kind of pornography, child or adolescent * * * can act as an incitement to imitate it in real life with someone they have access to and can intimidate not to tell. * * * With a large majority of them an underlying thread is the use of child, adolescent, or adult pornography to stimulate appetite and provide models of sexual abuse as well as be used as tools to seduce new victims. In my experience, it's the child pornography that is the most malignant.

Child pornography is used by pedophiles and child molesters as a facilitator or `training manual' in acquiring their own deviation, and also as a device to break down the resistance and inhibitions of their victims or targets of molestation, especially when these are children. In her book, <u>Child Pornography</u>, Dr. Shirley O'Brien states `a direct relationship exists between pornographic literature and the sexual molestation of young children. Law-enforcement officers say they routinely find pornographic materials when they investigate sex crimes against children.'

A child who may be reluctant to engage in sexual activity with an adult, or to pose for sexually explicit photos, can sometimes be persuaded to do so by viewing depictions of other children participating in such activity." S. Rep. No. 104-358 at 12-14 (1996).

Courts have tended to follow the same logic as Congress in recognizing a correlation between child pornography and escalating sexual crimes against children. For example, the Supreme Court stated that "evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." Osborne v. Ohio, 495 U.S. 103, 111 (1990). The Court called reference to a 1986 study by the Attorney General's Commission on Pornography, which states "a child who is reluctant to engage in sexual activity with an adult or to pose for sexually explicit photos can sometimes be convinced by viewing other children having 'fun' participating in the activity." *Id.* at 111, n7. This language almost directly parallels the language of the finding (3) of the Child Pornography Prevention Act.

Using this logic, several courts have determined that defendants accused of child pornography should not be released because of the danger that release would pose to the community. For example, in United States v. Hernandez, 154 F.Supp.2d 240, 242 (D. Puerto Rico 2001), the court declined the opportunity to release a defendant who was found with 15 images of minors ages 2-12 on his computer, and who had been accused of soliciting a 10-year-old female at summer camp to come to his house. Among its reasons, the court cited that the "defendant has admitted that his addiction to pornography was so strong that he began to act out the visual depictions with minor females." *Id.* at 244. In another case, the court declined to release a defendant suspected of child pornography distribution and molestation because of expert testimony stating that "exclusive pedophiles, [i.e. those primarily sexually attracted to

children], are rarely, if ever, successfully treated. . . . [Therefore,] release [of the defendant] would pose a serious danger to the community, particularly young boys, unless his activities were monitored at all times." United States v. Reinhart, 975 F.Supp. 834, 839 (W.D.L.A. 1997). The expert also testified that, "[exclusive pedophiles] who collect and/or distribute child pornography typically have been acting out with children for some time. It is possible but unlikely, that a collector or distributor would refrain from acting out." Further, the expert testified that the defendant would pose a "serious danger to the community unless he was monitored at all times." *Id.*

In the D.C. Circuit, federal case law is limited on this point. The case that comes closest to addressing this is United States v. Long, 328 F.3d 655 (D.C. Cir. 2003). In that case, the defendant attempted to cite a Ninth Circuit case that suggested the defendant's possession of sexually explicit magazines, including those with "erotic stories about men engaging in sex with underage boys," did not indicate that he had "actually engaged in, or even had a propensity to engage in, any sexual conduct of any kind." Guam v. Shymanovitz, 157 F.3d 1154, 1158-59 (9th Cir. 1998). The D.C. Circuit did not express a view on the merits of this argument, but they did state that "even if this is correct," the court could allow evidence at trial of pornographic materials for purposes "that were both specific and unrelated to propensity." Long, 328 F.3d at 664. In the instant case, we are not using the defendant's child pornography at this stage to show past propensity or actual engagement in molestation. Rather, we are trying to indicate that possession of such materials is grounds to deny his release because of the risk of recidivism or escalated molestation. If the court is willing to leave the door open to use of child pornography for propensity purpose in the restrictive environment of a trial, that at least suggests that such a

propensity argument might have some merit in the less restrictive pre-trial detention setting.

## IMPACT ON CHILD VICTIMS

Courts have frequently recognized the potential harm to the children that have been victimized by child pornographers and pedophiles.  <u>New York v. Ferber</u> is the leading Supreme Court case to address pornography and its harm to children.  <u>New York v. Ferber</u>, 458 U.S. 747 (1982).  The *Ferber* Court accepted the New York legislature's judgment by saying that, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child."  *Id.* at 758.  The Court further cited a report that found, "that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults."  *Id.*, citing Schoettle, Child Exploitation: A Study of Child Pornography, 19 J. Am. Acad. Child Psychiatry 289, 296 (1980).  To address the longer term effects of child pornography on the victim, the Court cited an authority that addressed the issue:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.  A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.  Shouvlin, Preventing the Sexual Exploitation of Children: a Model Act, 17 Wake Forest L. Rev. 535, 545 (1981).

Mimicking the finding of harm in *Ferber* the National Center for Missing and Exploited Children found that:

> It is important to realize these images can have a devastating and lasting effect on children.  In addition to any physical injuries they can suffer in the course of their molestation, such as genital bruising, lacerations, or exposure to sexually transmitted diseases, child victims can also experience depression, withdrawal, anger, and other psychological disorders.  Such effects may continue into

adulthood.  For instance women abused as children have statistically significant high raters of nightmares, back pain, headaches, pelvic pain, eating binges, and other similar symptoms...The lives of children featured in these illegal images are forever altered, not only by the molestation but by the permanent record of the exploitation.  Once sexual exploitation takes place, the molester may document these encounters on film video.  This documentation can then become the "ammunition" needed to blackmail the child into further submission, which is necessary to continue the relationship and maintain its secrecy.  National Center for Missing and Exploited Children, What is Child Pornography? available at, http://www.missingkids.com/missingkids/

                                          Respectfully submitted,

                                          JEFFREY A. TAYLOR
                                          UNITED STATES ATTORNEY

By:                /S/_____
      Angela George
      Assistant United States Attorney
      Bar No. 470-567
      Federal Major Crimes Section
      555 4th Street, N.W., Room 4444
      Washington, D.C.  20530
      202-514-7315
      Angela.George@usdoj.gov